HARRY F. BESOSA, demandante y apelante, *v.* NORWICH UNION FIRE INSURANCE SOCIETY, LTD., demandada y apelada.

No. 3341.—*Visto:* Febrero 5, 1925. *Resuelto:* Abril 24, 1925.

1. APELACIÓN Y ERROR—REVISIÓN—CUESTIONES DE HECHOS, VEREDICTOS Y CONCLUSIONES—CONCLUSIONES SOBRE LA EVIDENCIA—EVIDENCIA CONTRADICTORIA. Cuando la prueba es contradictoria y el tribunal inferior resuelve el conflicto de la misma, debe confirmarse la sentencia recurrida a menos que se demuestre que hubo pasión, prejuicio, parcialidad o manifiesto error por parte del juzgador.

SENTENCIA de *Charles E. Foote,* J. (Primer Distrito, San Juan), declarando sin lugar la demanda, con costas. *Confirmada.*

*José Martínez Dávila,* abogado del apelante; *Guerra-Mondragón & Soldevila,* abogados de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Se trata de un caso de cobro de dinero por servicios prestados. Alegó el demandante:

"*Primero.*—Que el demandante es mayor de veinte y un años de edad, abogado en ejercicio y vecino de esta ciudad y la demandada es una corporación debidamente constituida de acuerdo con las leyes de Inglaterra, siendo sus agentes en esta ciudad los señores J. Ochoa & Hno.

"*Segundo.*—Que Mr. William Hare como administrador para los Estados Unidos de la corporación demandada, confirió al demandante la representación de dicha compañía para que en su carácter de abogado gestionase de los Sres. J. T. Silva & Co. el pago de la suma de doce mil setecientos treinta y ocho dollars, cuarenta y nueve centavos que dichos señores adeudaban a la demandada.

"*Tercero.*—Que el demandante aceptó la representación de la demandada y por medio de gestiones privadas, primero y luego judiciales obtuvo el pago de la expresada suma de doce mil setecientos treinta y ocho dollars, cuarenta y nueve centavos.

"*Cuarto.*—Que fué convenido entre el demandante y el Sr. William Hare que el primero cobraría por sus servicios profesionales, el quince por ciento de la cantidad cobrada sin litigio y el veinte y cinco por ciento si había necesidad de proceder judicialmente.

"*Quinto.*—Que el demandante cobró seis mil setecientos treinta y ocho dollars, cuarenta y nueve centavos sin necesidad de acudir a los tribunales, y los seis mil dollars restantes mediante la interposición de la correspondiente demanda.

"*Sexto.*—Que la demandada se niega a pagar al demandante el importe de sus honorarios ascendentes a la suma de dos mil quinientos diez dollars, setenta y siete centavos."

Y contestó la demandada:

"Niega, a excepción del hecho primero, todas y cada una de las alegaciones esenciales contenidas en la demanda.

"Expone, como defensa especial:

"Que si el contrato a que la demanda se refiere es de noviembre de 1917, fecha en que se celebró uno entre el demandante, la demandada y J. T. Silva & Co., en tal contrato la demandada no empleó al demandante como abogado ni se obligó a pagarle cantidad alguna, sino que el demandante fué designado depositario (*trustee*) para cobrar y recibir de J. T. Silva & Co. la cantidad de seis mil dólares ($6,000) y entregarla a la demandada; pero no se le contrató para actuar como abogado en ningún momento.

"Que el demandante aceptó el encargo de que habla el hecho anterior y que su intervención en el asunto fué motivada por el interés que en el mismo tenía la National Surety Co., compañía de fianzas de la que a la sazón era agente el demandante.

"Que aun cuando el demandante hubiera tenido, como abogado, la representación de la demandada (y ésta repito que no lo utilizó como tal abogado) la acción del demandante ha prescrito por ministerio de la ley, conforme al art. 1868, inciso 1, del Código Civil."

Trabada así la contienda fué el pleito a juicio. La prueba del demandante, examinada aisladamente es bastante. No contiene evidencia escrita del contrato de remuneración, pero sí oral. La prueba de la demandada contradijo la del demandante no en cuanto a la existencia de los servicios, pero sí en cuanto a su obligación de remunerarlos. La corte resolvió el conflicto en favor de la demandada por sentencia registrada el 7 de marzo de 1924, y contra ella interpuso el demandante el presente recurso de apelación.

Hemos examinado la transcripción y no nos encontramos en condiciones de poder afirmar que la corte sentenciadora abusara de su discreción al apreciar la prueba. Esto bastaría para confirmar la sentencia, si no se levantara la siguiente cuestión por el apelante en su alegato, que requiere algún estudio:

"Y para terminar, aun admitiendo que no existió convenio o contrato expreso entre las partes, de servicios profesionales; que no existió convenio de mandato; que no existió convenio para la remuneración de los servicios profesionales que el demandante Besosa prestó a la demandada Norwich, habiéndose probado sin duda alguna que el demandante prestó valiosos servicios a la demandada y ésta los aceptó, según admite la misma Hon. Corte de Distrito de San Juan en su opinión, es aplicable el art. 1486 del Código Civil, enmendado por la ley de 24 de febrero de 1906." (1906, p. 22.)

La parte apelada responde:

"Ahora, en este recurso de apelación, el demandante pretende variar por completo la teoría del caso. Se entabló la demanda para el cumplimiento de un supuesto contrato de servicios profesionales. En la acción ejercitada se exige, por un abogado que se dice fué contratado como tal para que prestara ciertas gestiones profesionales, el pago de su remuneración preconvenida mediante acuerdo verbal. El demandante y apelante, en estos momentos, cuando ya ha pasado el juicio, alega que aun cuando no existiera el convenio expreso de servicios profesionales la corte de distrito ha debido señalarle y obligar a la demandada a pagarle una suma en compensación de los servicios prestados. Mal podía hacer eso el tribunal *a quo*, y menos podrá hacerlo esta Hon. Corte, cuando la teoría del caso ha sido la de un contrato cuyo cumplimiento se reclama y

cuando nunca estuvimos ante una demanda de *quantum meruit.*
¿Cuándo alegó el apelante que, si bien actuó como *trustee,* él tenía
derecho a la indemnización de sus servicios y que éstos razonable-
mente valían determinada suma?   ¿Cuándo se oyó a la apelada y se
le dió oportunidad para defenderse de tales alegaciones y probar
que, en caso de haberse prestado servicios realmente profesionales,
no podían tasarse los mismos por más de cierta cantidad?   Ni aun
en el juicio celebrado en la corte inferior podía el demandante levan-
tar semejante cuestión, por estar fuera de la controversia.   La de-
mandada se preparó para defenderse, y se defendió con buen éxito
porque la razón le asistía, de una reclamación nacida de un con-
venio expreso.''

Hemos examinado las autoridades citadas por ambas par-
tes en apoyo de sus respectivas contenciones y a la luz de
ellas estudiado los hechos de este caso y creemos que téc-
nicamente tiene razón la parte apelada.

Pero hay más.   La contención del demandado en el pleito
fué más allá de una negativa del pacto de remuneración.
Aceptó la intervención del demandante en su asunto y la
prestación de sus servicios, pero explicó la posición asumida
por el demandante que no llevaba consigo el cobro de hono-
rarios aunque no se hubiera pactado.   Parece conveniente
transcribir el párrafo que sigue de la opinión del tribunal
sentenciador:

''Y la corte, después de considerar detenidamente la prueba pre-
sentada y las alegaciones hechas, encuentra probado lo siguiente:
Que si bien es cierto que el demandante recibió las cantidades que
menciona en la demanda para la demandada, de la sociedad J. T.
Silva & Co., y que pagó las mismas a la demandada, su actuación,
sin embargo, en este asunto, lo fué únicamente en su calidad de de-
positario (*trustee*); que no existió nunca convenio o contrato de
servicios profesionales entre el demandante y la demandada.''

Siendo ello así, aunque entráramos en el análisis de la
prueba para ver si se habían prestado servicios que justi-
ficaran una sentencia favorable al demandante por el mé-
rito de los mismos, tendríamos que resolver el caso en con-
tra suya.

Una de las pruebas que sirvió de base a la corte senten-
ciadora es la carta que sigue:

"New York, April 13th, 1918.—Mr. Harry F. Besosa, San Juan,
Porto Rico.—Dear Sir: I acknowledge receipt of your letter of the
25th ultimo and enclosure being check for $750.

"I am glad to note you think that Silva is coming to his sense
and that he has paid on account $1,000. In reference to your reten-
tion of twenty-five per cent of this amount for your fees I would
say that this does not appear to be in order to me. The agreement
which was entered into between the firm of J. T. Silva & Co.,
Succrs. S. en C., by the acting partner of that firm, yourself an
myself provided that you should be appointed trustee for the collec-
tion of the note being the amount of money owing the Norwich
Union. I believe that if you will examine that document you will
see clearly from a legal standpoint that no fees are due you from
the Norwich Union. The Norwich Union simply has consented to
become the beneficiary under a trust created by the Silva firm.
This was clearly understood because I warned you at the meeting
when the agreement was signed that it would be necessary for you
to look to the Silvas for your fees and to this warning you made no
objection. Under these circumstances I will ask that you kindly
send me the $250 which you have retained together with any fur-
ther collection. If after the completion of your trust and the pay-
ment to the Norwich Union of $6,000 you cannot collect a fair com-
pensation from the Silvas I shall be glad to recommend to the
Head Office that they consider favorably an equitable compensation
to you on their part.—Yours truly,—William Hare, Manager."

Si lo dicho es cierto, y la corte estimó que lo era, no
sólo no se pactó el pago de honorarios sino que se estipuló
que los honorarios serían pagados por otra persona, prome-
tiéndose únicamente al demandante una recomendación de
una consideración favorable para fijar una compensación
equitativa en el caso de que esa otra persona no cumpliera.

En tal virtud la situación legal después de considerada
la cuestión del *quantum meruit,* es la misma que la que en-
contramos al principio: una prueba contradictoria, resuelto
el conflicto a favor del demandado, sin que se haya demos-
trado pasión, prejuicio, parcialidad o error manifiesto por

parte del juzgador, *debiendo en su consecuencia confirmarse la sentencia recurrida.*